## WAGNER v. COUNTY COM'RS OF FREDERICK COUNTY, MD.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1899.)

### No. 279.

1. JUSTICES OF THE PEACE—MANNER OF PROVING JUDGMENT.

The court of a justice of the peace in Maryland is one of limited and inferior jurisdiction, and a judgment of such court can only be established as a cause of action by proving by competent evidence all the facts essential to jurisdiction, and showing the regularity of the proceedings. A transcript of the record showing the judgment, but not showing such facts, is insufficient.

2. SAME—AUTHENTICATION OF TRANSCRIPT—PROOF OF SIGNATURE OF JUSTICE.

To render a transcript of the records of a justice of the peace admissible in evidence, the signature of the justice thereto must be authenticated.

3. SAME—CERTIFICATE OF SECRETARY OF STATE OF MARYLAND.

The secretary of state of Maryland is not authorized by the statutes of that state to certify to the genuineness of the signature of a justice of the peace.

In Error to the Circuit Court of the United States for the District of Maryland.

R. S. Tharin (John Wharton Clark, on brief), for plaintiff in error.
Edward S. Eichelberger (W. Irvine Cross, on brief), for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and PAUL, District Judge.

GOFF, Circuit Judge. The plaintiff in error, who was plaintiff below, instituted his action at law in the circuit court of the United States for the district of Maryland against the county commissioners of Frederick county, Md., on the 8th day of June, 1897. In his petition he declared on 11,000 judgments, still unsatisfied, alleged to have been rendered in his favor, during the month of June, 1885, by one John Haynes, a justice of the peace in and for said county. The defendants appeared, and demurred to the complaint, which was overruled, and they then pleaded as follows: First, that the alleged cause of action did not accrue within three years; second, that there was no record of the judgments sued upon remaining among the records of John Haynes, the justice who it is alleged rendered them; third, that the defendants were never indebted to the plaintiff, as alleged. To these pleas demurrers were filed to the first and second, and issue was joined upon the third. The court below sustained the demurrer to the first and second of said pleas, and then the defendants offered and were allowed to file the following additional pleas: Fourth. That the said John Haynes had no jurisdiction, as a justice of the peace, to render such judgments; fifth, that the alleged judgments were forgeries; sixth, that said judgments were all procured by fraud. Issue was joined on these pleas. The right to a jury trial having been waived, the case was, by consent, submitted to the court. The plaintiff, for the purpose of sustaining the issues on his part, offered in evidence 11,000 sets of printed papers, purporting to be under the hand and seal of John Haynes, justice of the peace, said plaintiff claiming that the same were copies of the original judgments rendered by that justice, each for $100 debt, and $1.30 costs, amounting in the aggregate to $1,114,300. Attached to said printed papers were what purported to be certificates of the secretary of state of the state of Maryland, under his official seal, one of them certifying to the genuineness of the signature of said John Haynes to some paper, the identity of which was at least in doubt. Each of said sets of printed papers so offered as evidence consisted of five separate documents, each upon a separate piece of paper, the five being fastened to each other by a metal fastener, and each of the 11,000 sets being identical, except as to the number and date of the said judgments. Copies of each of said papers, including those purporting to be certificates from the secretary of state, are here given, in order that the record of this most remarkable case may not be mutilated. They are as follows, viz.:

"State of Maryland, Office of the Secretary of State.

"Annapolis, Md., October 1, 1885.

"I, George B. Milligan, secretary of state of the state of Maryland, do hereby certify that John Haynes was duly appointed and commissioned by the governor, by and with the advice and consent of the senate of the state of Maryland, a justice of the peace of the state of Maryland in and for Frederick county, in the Tenth election district of said county, for the years 1882, 1883, 1884, and 1885, and was sworn, and the signature thereto purporting to be his is genuine, and that full faith and credit are due, and ought to be given to his acts as such.

"Given under my hand and the seal of my office, this 1st day of October, in the year of our Lord eighteen hundred and eighty-five.

"George B. Milligan, Secretary of State.

"County Commissioners of Frederick County, Maryland, to Harrison Wagner,
Dr.

For the fulfillment in payment of the first part of your indebtedness
to me on all accounts.......................................... $100

"I hereby certify that the foregoing writing is a true copy of the cause of
action filed with me by plaintiff in No. 1 on my docket, and similar cause of
action was filed with me in each case between the same parties, and judg-
ment rendered thereon by me in No. 1 to 1,000, inclusive, on said docket.
Summons issued in each case May 11, 1885, directed to William H. Krantz,
constable, returnable June 1, 1885. Returned by William H. Krantz, con-
stable, marked on the back of each summons as follows:

"'Summons served upon George W. Etzler, member of the board of county
commissioners of Frederick county, state of Maryland.

" 'William H. Krantz, Constable.'

"Continued for trial in each case to June 8, 1885. Trial took place in each
case June 8, 1885. Evidence in favor of plaintiff in each case. Records and
proceedings as fully as the same appears on my docket.

"Witness my hand and seal, this 18th day of August, 1885.

"John Haynes, J. P.    [Seal.]

"Judgment No. 1.

"Harrison Wagner vs. County Commissioners of Frederick County, Maryland.

"1885, June 8.    Judgment in favor of plaintiff for $100 $^{00}$/$_{100}$ dollars, debt
with interest thereon from date hereof, till paid, and $1.30 cents costs.

"Witness my hand and seal.    John Haynes, J. P.    [Seal.]

"I hereby certify that the foregoing is a true copy of a judgment rendered
by me, and a purport taken from my docket.

"Witness my hand and seal, this 18 day of August, 1885.

"John Haynes, J. P.    [Seal.]

"State of Maryland, Office of the Secretary of State.

"Annapolis, Md., October 1, 1885.

"I, George B. Milligan, secretary of state of the state of Maryland, do here-
by certify that John Haynes was duly appointed and commissioned by the
governor, by and with advice and consent of the senate of the state of Mary-
land, a justice of the peace of the state of Maryland, in and for Frederick
county, in the Tenth election district of said county, for the years 1882, 1883,
1884, and 1885, and was sworn, and the signature thereto purporting to be
his is genuine, and that full faith and credit are due and ought to be given
to his acts as such.

"Given under my hand and the seal of my office, this 1 day of October, in
the year of our Lord eighteen hundred and eighty-five.

"[Seal.]    George B. Milligan, Secretary of State.

"Hereunto is added a full and complete record in proof of the within judg-
ment, in accordance with article IV., section 1, of the constitution of the
United States, and in accordance with the constitution and laws of the state
of Maryland, setting forth the facts and truth as evidence in answer to each
and everything that they might try to raise or get up against the judgment
or the plaintiff, Harrison Wagner.

"State of Maryland, Office of the Secretary of State.

"Annapolis, Md., Oct. 14, 1885.

"I, George B. Milligan, secretary of state of the state of Maryland, do
hereby certify that, before I would certify by certificate to the within judg-
ment, I made a searching and thorough examination and investigation, and
was told by the within justice of the peace and the constable that the sum-
mons or process was served upon the within defendants, county commission-
ers of Frederick county, Maryland, in Frederick county, state of Maryland,
and that everything was done in strict conformity and in accordance with

the constitution and laws of the state of Maryland, and that the summons was served upon George W. Etzler, member of the said board of county commissioners. I also asked Mr. George W. Etzler if the summons or process was served, upon him as a member of the board of county commissioners of Frederick county, Maryland; and he told me that the summons or process was served upon him as a member of the board of county commissioners of. Frederick county, Maryland, for the said board of county commissioners to appear before a justice of the peace in said county of Frederick, state aforesaid, by the name of John Haynes, to answer unto Harrison Wagner in a plea of damage; and that he, the said George W. Etzler, appeared before the said justice of the peace, John Haynes, of Frederick county, state of Maryland, to answer for the said board of county commissioners of Frederick county, Maryland; and that Harrison Wagner had a proper voucher or cause of action to accompany each and every summons issued by the said justice of the peace, John Haynes. against the said defendants, the county commissioners of Frederick county, Maryland. who were summoned; and that Harrison Wagner appeared before the said justice of the peace, John Haynes, on the return day, and proved each and every voucher or cause of action that accompanied each and every summons issued against the said defendants, the county commissioners of Frederick county, Maryland; and that the said justice of the peace, John Haynes, rendered judgment in favor of the plaintiff, Harrison Wagner, on each and every summons, and no appeal was taken or entered by said defendants, the county commissioners of Frederick county, Maryland, who were duly summoned and notified to act in the said cause. But the said defendants, the county commissioners of Frederick county, Maryland, said that the circuit court of Frederick county and the court of appeals of the state of Maryland would not give Harrison Wagner any law; therefore it was of no use for them to keep any account of the summons or processes or of the judgments.

"The grounds upon which the within judgment was founded was for damage resulting from blackmail. (And in former false arrests and false indictments the county commissioners of Frederick county, Maryland, would not pay Harrison Wagner the costs that had accrued or was owing to the said Harrison Wagner by the said county commissioners of Frederick county, Maryland, for the costs of defense of himself against these prosecutions; he, Harrison. Wagner, having gained them all.) These people that were persecuting and blackmailing Harrison Wagner, being emboldened by the Frederick county court and the court of appeals of the state of Maryland in refusing to give Doctor Harrison Wagner any law to protect himself against them, now go before Chief Judge John Ritchie, of said county of Frederick, state of Maryland, and get out an illegal warrant for Doctor Harrison Wagner's arrest. And these whole proceedings were subjected to the power and order of the said board of county commissioners of Frederick county, Maryland, who could have quashed or stopped them, but who assented to them. Hence Doctor Harrison Wagner was falsely arrested, brought to Frederick, state of Maryland, and refused a fair trial. He was arrested by mob force, brought to Frederick, state of Maryland, by mob force, and was put in the Frederick county jail for five years by mob force, and held there for a very long time (one year), subject to very harsh and unkind treatment, until he was released by writ of habeas corpus before Judge John E. Smith, of Westminster, Carroll county, state of Maryland. I also asked Judge John Ritchie about it, and he told me that Doctor Harrison Wagner had committed no offense against the law, but was put in jail, at any rate, without any color of law, and that he was very sorry for the part he took in it, and hated it worse than anything that he had ever done in his life, but was overawed by the mob. I also asked the county commissioners of Frederick county, Maryland. They told me that the arrest and imprisonment of Doctor Harrison Wagner was without foundation, and without any color of law, and that they had waited on Doctor Harrison Wagner, and told him that if he would promise not to sue Frederick county, state of Maryland, for damages, that they, the county commissioners of Frederick county, Maryland, would then release him (Harrison Wagner), but that Doctor Harrison Wagner would not commit himself in any promise of that kind. And now, after this investi-

gation, I have found the suit of Doctor Harrison Wagner against the county commissioners of Frederick county, Maryland, for damages, just, true, and right, and the within judgment obtained good and valid, according to the laws of the state of Maryland, for twelve years, and cannot be debarred under twelve years; and that the said judgment has never been questioned by any court; and that the said judgment was filed in the clerk's office of the circuit court of Frederick county, state of Maryland, and Judge John Ritchie, chief judge of said court, told the clerk thereof that he must not give Harrison Wagner any certificate to attach to the transcript of the said judgment or any of his papers, and that he must destroy the said judgment that was filed in the clerk's office of said court, and any other records or papers that would be of use to Harrison Wagner in his cause or cases; and it was destroyed, as so ordered.

"As to Doctor Harrison Wagner's residence, it is truly as follows: In March, 1880, his mother was taken sick, and died The doctor and his mother lived alone together, he being single. He took good care of his mother, and was very much attached to her, and they lived together very happy and contented. In the summer of 1880, Dr. Harrison Wagner shipped his library and laboratory to Cardington, Morrow county, state of Ohio, where it was his purpose to reside after his mother died; Woodsboro, Frederick county, state of Maryland, being too hard a place for him (a gentleman) to live, on account of his fixed principles of character. The doctor then went to Mechanicstown, Frederick county, state aforesaid, at which place he stayed until he fixed up his matters. In the first part of March, 1882, Dr. Harrison Wagner left Mechanicstown, Frederick county, Maryland, never to come back to reside in the state of Maryland again, but left said state to reside in Cardington, Morrow county, state of Ohio, where he resides and where he votes. Some of the Democrats in Woodsboro, Frederick county, Maryland, who held Dr. Harrison Wagner in high esteem as a physician, and as a perfect Christian and gentleman, told me that these parties would not have done anything against Dr. Harrison Wagner if he would have been a Democrat, and that every stitch of clothes ought to be taken from them for their false swearing and blackmail against him, and that the circuit court of Frederick county, and the court of appeals of the state of Maryland ought to be exposed and impeached for their winking and conniving at their false swearing against him with impunity.

"And I do most solemnly say that all the within statements are absolutely true, without the least qualification or reservation whatever, and that I take no interest or part, but only do what is just, true, and right towards a man that has been wronged, injured, blackmailed, and persecuted because he was honest and upright, and all that could be said of him is that he lives with a desire to do what is right towards every man, woman, and child on the earth; and, if any one wronged him, he would go to the full extent of the law to protect himself, and this is what Saint Paul did, the greatest man that ever lived. Therefore, I certify that the within judgment, Harrison Wagner vs. County Commissioners of Frederick County, Maryland, is right, just, and true.

"Given under my hand and the seal of my office, this 14 day of October, in the year of our Lord eighteen hundred and eighty-five.

"[Seal.]                                   George B. Milligan, Secretary of State."

The plaintiff offered no other evidence, and the defendants, declining to offer any testimony, requested the court to rule that said certificates of the secretary of state were not sufficient in law to prove the genuineness of the signature of John Haynes, as a justice of the peace, to said transcripts. The court below so held, and directed a judgment for the defendants. A writ of error was sued out, and the sole question before us is as to the correctness of such ruling.

It requires five pages of the printed record of this case to set forth the copies of papers just referred to, and there are said to be 11,000 of such transcripts, making 55,000 pages, or 75 volumes of over 730

pages each, of these judgments and certificates. The judgments alone, with the certificate of the justice attached thereto, would make 15 of such printed volumes, and it is this record that is said to have been deposited with the clerk of the circuit court of Frederick county, Md., and subsequently destroyed by order of the judge thereof. These certificates of the secretary of state, purporting to be under his hand and seal, are not authorized by the statutes of the state of Maryland in so far as they refer to the mass of facts referred to therein, and are as to them entirely ineffective. It is hard to believe that any one who ever held the position of secretary of state of the state of Maryland could be induced to sign said certificates and attach the seal of his office thereto. As such official, he can certify to nothing, except only those matters as to which he is empowered by the legislature of that state; and it is folly to claim that any statutory authority has been so given him under which he could properly make and give the extraordinary certificates referred to. He has no power to even certify that the signature of a justice to a particular paper which is presented to him is the genuine signature of that justice. In fact, these certificates themselves do not show, as it is claimed they do, that the signature of the justice to the paper called the "judgment" is genuine. They show that John Haynes was a justice for the years 1882, 1883, 1884, and 1885, that he was sworn, and that the signature thereto purporting to be his is genuine; but they do not in any way identify such paper, nor do they make certain the signature to which the certificate is supposed to apply. In addition to this, there can be no question but that the court held by a justice of the peace in the state of Maryland is of limited and inferior jurisdiction, having no seal to attest its acts, and that as to such courts the rules applicable to courts of general jurisdiction do not apply. As a necessary consequence, everything essential to the validity of their proceedings must be made to appear by proper testimony. A justice of the peace in that state has jurisdiction in certain civil suits where the amount in controversy does not exceed $100; but his court is not one of record, and its acts are not of that high and supereminent authority that their truth cannot be called in question. Weikel v. Cate, 58 Md. 105.

The proceedings had before justices of the peace in Maryland must be proven in the same way as other matters of fact are, differing in this respect from the proceedings had in a court of record, the acts of which are shown by the certified copies of its judgments, attested by its seal. In this case it was necessary on the part of the plaintiff below to show that the defendants in the actions before the justice had been regularly summoned; that all the proceedings had therein were duly taken; and that the judgments declared on were rendered as required by law. The proceedings of a court of general jurisdiction are presumed to have been in conformity with legal requirements, until there is affirmative proof to the contrary; but the proceedings of a court of limited jurisdiction must be shown to be regular by affirmative proof. In this case it should have been proven, by competent evidence, that the justice duly issued writs of summons for all of the defendants, to appear in each of the 11,000 suits referred to; that the same were regularly served on the defendants; and that all the subse-

quent proceedings were taken in accordance with the provisions of the statute in such case made and provided. The transcripts offered as evidence in the court below do not show in a legal and proper manner that any of these requirements were complied with, and they are therefore fatally defective. Shivers v. Witson, 5 Har. & J. 132; Owings v. Worthington, 10 Gill & J. 293; Clark v. Bryan, 16 Md. 176; Fahey v. Mottu, 67 Md. 250, 10 Atl. 68; Kane v. State, 70 Md. 546, 17 Atl. 557. The signature of the justice to the different papers, so offered as evidence, should have been authenticated, in the same way as the law requires that signatures to papers in general shall be proven; and, as there was no such testimony offered, the ruling of the court below was clearly proper.

It may be well to note that the secretary of state of Maryland is only authorized to certify equally with the clerks of the several circuit courts of the counties, and of the superior court of Baltimore city, to the character and qualification of certain officers who have been reported to him by said clerks as having qualified by taking the oath of office. Said clerks, when required so to do, must give a certificate, under the seal of their office, of the qualification of any public officer who has taken and subscribed the oaths of office before them, or whose oath of office is recorded in the office of the clerk so certifying. Nowhere is there authority given by statute, either to the secretary of state or to any of said clerks, to certify to the genuineness of the signature of any of the officials who may have thus qualified before them, or whose oaths of office are of record in their respective offices. The judgment rendered by the court below is without error, and the same is affirmed.