STATE OF MARYLAND *EX REL.* JOHN BAUM *vs.*
WARDEN OF BALTIMORE CITY JAIL.

*Summary Jurisdiction of Police Magistrates in Baltimore City
—Waiver of Jury Trial—Notice to the
Accused of His Rights.*

Section 632 of the Baltimore City Charter (Act of 1898, Ch.
123), which confers summary jurisdiction upon police magis-
trates in that city to try persons charged with certain offenses
not punishable by confinement in the penitentiary, provided
the accused, after being informed of his rights, waives a jury
trial and elects to be tried by the magistrate, is constitutional.

Section 632 of the Baltimore City Charter, authorizing Station
House Justices of the Peace to try persons arrested and
charged with certain offenses, including assault and battery,
provides that "it shall be the duty of the said Justice, before
proceeding to hear, try and determine any of the charges
aforesaid, to inform the party or parties charged therewith of
his or their respective right to a jury trial." In this case it
appears that an ignorant workman, sixty-one years old, was
arrested and imprisoned late at night. Early the next morning
he was brought before a Station House Justice, who told him
that he was charged with having committed an assault and
battery upon a female child, and said to him: "You have a
right to a Court or jury trial or to be tried here. Which do
you want?" The prisoner replied: "I might as well be tried
here. I have not done anything. I am innocent." The
magistrate said it was not a question of guilt or innocence,
but where he wanted his case tried; and the prisoner answered
that he wanted it tried before him. The magistrate proceeded
at once with the trial, without asking the prisoner whether he
wished to have witnesses summoned in his behalf or to pro-
cure counsel, and sentenced him to two years' confinement in
the City Jail. Upon a writ of *certiorari, held,* that the peti-

tioner did not deliberately waive his rights to a jury trial after an opportunity to ascertain his real situation and rights; that consequently the magistrate did not have jurisdiction to try the case, and that the petitioner is entitled to be released.

*Decided June 1st, 1909.*

Appeal from the Court of Common Pleas of Baltimore City (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Isaac Lobe Straus, Attorney-General,* and *Eugene O'Dunne* (with whom was *Albert S. J. Owens* on the brief), for the appellant.

*William C. Smith* (with whom was *Augustin J. Quinn* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Court of Common Pleas of Baltimore City, passed upon a writ of *certiorari,* directing the release of John Baum from the Baltimore City Jail.

It appears from the record that Baum, a man sixty-one years of age, was arrested on January 3rd, 1909, between ten and eleven o'clock at night, while at work in the engine room of the exhaust fan of the P., B. and W. Railroad tunnel, on North avenue, in Baltimore City. He was taken to the Northwestern Police Station and put in a cell. On the next morning he was taken out of the cell and summarily tried by the magistrate whose duty it was to sit at that station for an alleged assault and battery in December, 1908, on Dorothy Bowers, a female child, eleven years old, and was convicted and sentenced to two years' confinement in the City Jail.

On January 9th, Baum applied to the Hon. Thomas I. El-liott, sitting in the Court of Common Pleas, for a writ of habeas corpus and also for a *certiorari* requiring a return into that Court of the assault and battery proceedings had before the magistrate. Both writs having been granted and return made in response thereto, the hearing under the two writs was had at the same time in the Court of Common Pleas. The case having been heard upon the returns to the writs and the testimony of witnesses, the learned judge below, being of the opinion that the magistrate had not lawfully acquired jurisdiction of Baum and of the offense for which he was tried, passed the order, as upon the writ of *certiorari,* for his release. From that order the present appeal was taken by the State.

It also appears from the record that when Baum was brought to the station house a charge was entered against him on the station-house blotter of violation of Art. 27, sec. 369 of the Code, which makes the carnal knowledge of a female child under fourteen years of age a felony punishable at the discretion of the Court by death or imprisonment in the penitentiary for life, or for a period of not less than eighteen months. That entry was made by the lieutenant in charge of the station during the night when Baum was brought in, but, upon ascertaining from Dr. Caspari, who had examined the girl, that there had been no penetration of her person, the entry was stricken out, and in lieu of it was entered "Assaulting Dorothy Bowers, aged 11 years." The formal entry upon the magistrate's docket of the charge upon which Baum was tried was "Assaulting and beating Dorothy Bowers, age 11 yrs., on or about the month of Dec., 1908, in Baltimore City, State of Maryland." The magistrate testified that Baum was in fact tried upon that charge, after having first been informed what it was.

According to the magistrate's testimony, when he arrived at the station house on the morning after the arrest the sergeant in charge told him of the arrest and of the request to Dr. Caspari to make a physical examination of the girl. He

then went into his room, where he met Dr. Caspari, who informed him that he had examined the girl and wanted to testify; that he was very busy and wanted to get away. Baum was at once brought out of his cell, and the magistrate after reading to him the charge of assault and battery, said to him: "You have a right to a Court or jury trial or to be tried here. Which do you want?" · Baum replied: "I might as well be tried here; I have not done anything; I am innocent." The magistrate replied: "That it was not a question then as to whether he was innocent or guilty, but the question was where he wanted his case tried," whether before him or at the Criminal Court, and Baum replied that he wanted it tried there before him. Baum was not asked whether he wished to have counsel or to have any witnesses summoned in his own behalf or informed of his rights in that respect.

The magistrate thereupon proceeded at once with the trial, calling Dr. Caspari as a witness for the State, who testified that he had examined the girl and found no evidence of any entry or penetration of her person. Baum was then put back in his cell, where he was kept for about a half an hour, until the other witnesses for the State had arrived at the station house, when he was brought out again and his trial concluded.

The evidence appearing in the record was taken before the Court under the habeas corpus and *certiorari* proceedings, but it is said to be that of the witnesses who testified before the magistrate, he not having reduced their testimony to writing. The only direct evidence touching the commission of the offense was that of Dorothy Bowers, who testified that when she visited Baum's room one day in December he had improperly handled her person in the presence of another girl whose name she mentioned. The other girl was not called as a witness, and Baum positively denied the commission of the alleged offense. Baum further testified that he knew nothing about law and supposed when he consented to have his case heard before the "squire" that the "squire" would then send it to the Court for trial.

We forbear any expression of opinion upon the guilt or innocence of the petitioner Baum, as the only issue raised by the *certiorari* is that of the jurisdiction of the magistrate to try the case. *Lancaster* v. *State,* 90 Md. 215; *Kane* v. *State,* 70 Md. 552; *Gaither* v. *Watkins,* 60 Md. 582; *Williamson* v. *Carnan,* 1 G. & J. 196.

The counsel for the respective parties to this appeal have united in the request that, in passing upon the question of the magistrate's jurisdiction, we express our views upon the constitutionality of sec. 632 of the Baltimore City Charter, in so far as it professes to confer jurisdiction upon Justices of the Peace to hear, try and determine cases of assault and battery. Another jurisdictional question arising upon the record is the sufficiency *vel non* of the alleged waiver of a jury trial by Baum, such a waiver being made, by the express terms of the statute, a condition precedent to the vesting of jurisdiction in the magistrate over the offense of assault and battery. Taking up these two questions in their natural order we will consider first the constitutionality of the portion of sec. 632 involved in the present case.

That section enumerates and defines the powers and duties of the Justices of the Peace, selected to sit at the several station houses in Baltimore City, in respect to charges made against persons for criminal offenses. It confers summary jurisdiction upon such justices to hear, try and determine charges of certain offenses, including assault and battery, but provides that "it shall be the duty of the said justice before proceeding to hear, try and determine any of the charges aforesaid, to inform the party or parties charged therewith of his or their respective right to a jury trial." It further provides that if a jury trial be prayed by the party charged with the offense or by the State's Attorney the justice shall commit the accused party or hold him to bail for trial in the Criminal Court.

In *State* v. *Glenn,* 54 Md. 572, our predecessors considered very fully the constitutionality of the Act of 1878, Ch. 415, sec. 10, conferring jurisdiction upon Justices of the Peace to

try, convict and commit to the House of Correction vagrant and habitually disorderly persons. That Act was there held to be constitutional because, under the well established modes of procedure in England and in Maryland, notwithstanding the provisions of the Magna Charta and the several Declarations of Rights of the State, summary jurisdiction had long been exercised, under various statutes, by magistrates over vicious, idle, vagrant and disorderly persons without the intervention of a jury. The Court based the determination arrived at in that case mainly upon the proposition that the right to trial by jury did not exist in reference to the petty offenses of vagrancy and habitually disorderly conduct. *Glenn's Case* therefore cannot, of itself, be regarded as conclusive of the summary jurisdiction of magistrates over the offense of assault and battery, because as to that offense sec. 632 recognizes the right of the accused to trial by jury by requiring him to waive the right as a condition precedent to the magistrate's power to try the case.

In the later case of *Danner* v. *State,* 89 Md. 220, this Court held to be unconstitutional so much of the Act of 1896, Ch. 128, as attempted to confer upon Justices of the Peace in certain counties concurrent jurisdiction with Circuit Courts for the trial of the offense of petit larceny, provided that when the accused is brought before the justice neither he nor the State's Attorney prayed a jury trial. It was conceded in that case that sundry minor offenses such as the one involved in *State* v. *Glenn, supra,* could always be reached by summary proceedings, but petit larceny was held not be be included in that class of offenses because under sec. 157 of Art. 27 of the Code it was punishable by confinement in the penitentiary. We also held in *Danner's Case* that offenses so punishable did not fall within the operation of the principle, which had in several instances been applied by us to civil cases and prosecutions for minor offenses, that the right to appeal from the magistrate to the Circuit Court and there obtain a jury trial afforded a sufficient guarantee of the right of the accused to trial by jury. In that case we said,

speaking through JUDGE PAGE, that the general scope and purpose of the Act of 1896, Ch. 128, "was to confer jurisdiction on the magistrate to hear and finally determine, only in such minor offenses as were punishable by imprisonment in the jail or house of correction or by pecuniary fine." The assault with which Baum was charged in the present case, although not felonious under our laws, was indecent in character and one generally regarded as aggravated and in some jurisdictious severely punishable by statute. It is certainly of a more serious character than vagrancy or habitually disorderly conduct.

In the still more recent case of *Lancaster* v. *State, supra,* we held, upon the authority of *State* v. *Glenn* and *Danner* v. *State,* that the Act of 1894, Chap, 281, of which sec. 632 of the Baltimore City Charter is a codification, was a valid exercise of legislative power and that it conferred on Police Justices in Baltimore City jurisdiction to hear, try and determine cases of persons charged with assault and battery, not punishable by confinement in the penitentiary when they waive their right to a jury trial. The question of jurisdiction now under consideration falls directly within the operation of the principle anounced in the *Lancaster Case.*

As the jurisdiction of the magistrate to entertain the charge of assault and battery against Baum in the present case depended also upon the condition precedent of a waiver by him of his right to a jury trial, we will now inquire whether he appears by the record to have made such a waiver within the meaning of the statute. We have already stated the circumstances under which his alleged waiver was made. He was arrested and imprisoned late at night and early the next morning he was brought from his cell into the presence of the magistrate who read to him the charge against him appearing upon the docket and asked him at once, before he had any opportunity to consult counsel, ascertain his defense or collect his witnesses, whether he would be tried there or in Court with a jury. Upon his protesting his innocence the magistrate according to his own testimony "said to him that

it was not a question then as to his guilt or innocence but the question was where he wanted his case tried." Baum having replied "it might as well be tried here" the magistrate proceeded then and there to try the question of his guilt or innocence without inquiring whether he wished to have witnesses summoned in his behalf or to procure counsel. Within twelve hours of his arrest, the greater portion of which was night time, he was tried, convicted and sentenced to two years' confinement in jail. He was not a vagrant, or an idle or vicious or habitually disorderly person, but an industrious man of advanced age in an humble station in life who had just been arrested and charged with an offense which, if proven to the satisfaction of the magistrate, might cause his incarceration in jail for several years. He was certainly entitled to some reasonable opportunity to ascertain his real situation and rights so that he might act intelligently and with deliberation when surrendering so important a constitutional right as a jury trial.

What was said by us, in the opinion in *Danner's Case,* of an alleged waiver of jury trial made in a police station under less trying circumstances than those presented by the present record may be repeated here. We there said: "The situation therefore with which the accused in this case was confronted when brought before the justice was this: He was compelled either to forego his constitutional right to a trial by an impartial jury, or else submit to be committed to await the convening of a Court, that might not hold its next session for weeks or months thereafter. Being put to this distressing alternative, he may have felt compelled to elect a trial before the justice rather than he held for a considerable period, subject to the charge and without an opportunity of vindicating himself if he could. To call that a waiver on the part of one who has a constitutional right to a jury in the first Court in which he is put on trial is a misuse of terms. His action under such circumstances is not the prompting of an unfettered will but is more nearly the result of a species of legal duress. Common justice would seem to require that a waiver

obtained under such conditions ought not to be so applied as that valuable constitutional rights shall by reason thereof be lost or impaired."

In our opinion the alleged waiver by Baum of his right to a jury trial in the case before us cannot, in view of the circumstances under which it was made, be regarded as such an intelligent and deliberate surrender of that right as is intended by the provisions in that respect of sec. 632 of the Charter of Baltimore City. It follows therefore that the magistrate before whom he was tried and by whom he was sentenced never acquired jurisdiction over his case, and the order for his discharge must be affirmed.

*Order affirmed with costs.*