## JACOB KARTMAN

*vs.*

## MORRIS MILIMAN ET AL.

*Judgment—Jurisdiction of Person Necessary—Power to Con-
fess Judgment—Compliance with Conditions
Precedent—Injunction.*

A magistrate is without jurisdiction to enter a judgment *in
personam* unless he has acquired, as a result of process or vol-
untary appearance, jurisdiction of the person.          p. 505

In the case of inferior courts sitting in the exercise of a spe-
cial and limited jurisdiction, such as that exercised by magis-
trates sitting under the laws of this State, affirmative proof of .
the substantial regularity of the proceedings is necessary.

pp. 505, 506

Where a power of attorney in a note is relied on as a sub-
stitute for personal service on defendant or for the latter's ap-
pearance in proper person, to support a judgment by confession
on the note, the conditions named in the power as precedent to
the exercise of the authority must be substantially complied
with, and where the power authorized any person to appear
before a magistrate and to confess judgment in favor of the
corporation payee against the maker for such amount as the
president or other corporate officer might swear to be due, the
magistrate could not enter a judgment for plaintiff on the
strength of an affidavit by the plaintiff's attorney as to the
amount due, without any officer making oath as to such
amount, and without any person appearing before the magis-
trate and confessing judgment.          pp. 506, 507

Equity has power to enjoin the execution of a personal judg-
ment entered without jurisdiction of the person, without ref-
erence to whether the defendant knew of the pendency of the
action.          p. 507

*Decided January 17th, 1924.*

Appeal from the Circuit Court of Baltimore City (Duffy,
J.).

Bill by Morris Miliman and Bessie Miliman, his wife, against the Belford Building and Loan Association, to the use of Jacob Kartman, and Jacob Kartman, to restrain further prosecution of actions on certain notes, and the execution of judgments obtained thereon. From a decree for plaintiffs, said Kartman appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ. .

*Herbert Levy,* for the appellant.

*David Ash,* with whom was *Dave B. Kirshner* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

On November 18th, 1919, Bessie Miliman, Morris Miliman and Jacob Kartman, as joint makers, executed to the Belford Building and Loan Association, a body corporate, four promissory notes under seal, each for the sum of one hundred dollars, and each payable as to both principal and interest in weekly instalments of two dollars on the principal and twelve cents on account of interest. The four notes were all alike in their terms and each contained the following power, authorizing a confession of judgment for such amount as might be due on them in the event of a default:

"In case of default in any of the weekly payments herein provided for, and the said note is collected by suit or through attorney, we promise to pay an additional fee of five dollars as collection fees, and we empower any person for us and as the attorney for each of us, to appear before any justice of the peace of the State of Maryland, or any court thereof, in any suit instituted to recover the amount due on said shares and to confess judgment in favor of the said body corporate, and against each of us for such amount as the president or other officer of said body corporate will swear is then due on said note or on said share * * * and we each of us do also waive every right of

exemption that we now have or may hereafter have,
whether it be under the laws of Maryland or under
the laws of any other forum."

The notes being in default, suit was brought on each of them
before a magistrate in Baltimore City on or about the eighth
day of January, 1923, and on that day M. Henry Goldstone,
as attorney and agent for the plaintiff, appeared before the
magistrate and made oath that there was due on each note the
entire principal sum of $100, whereupon judgment for that
amount was entered by the magistrate in each case against the
appellees in favor of the appellant. The judgments were
recorded in the Superior Court of Baltimore City, and on or
about March 1st, 1923, Jacob Kartman, to whose use the
judgments had been entered, instituted supplementary pro-
ceedings on them in that court for the purpose of inquiring
into the credits and resources of the judgment debtors, Bessie
and Morris Miliman, and on that day it was ordered by that
court that they bring in a list of their accounts and credits and
all books and papers used by them in their business transac-
tions. On March the third, two days later, Mr. and Mrs.
Miliman filed the bill of complaint in this case, in which they
alleged that the promissory notes upon which the judgments
had been obtained had been paid, and that the judgments
were obtained without their knowledge or consent, through
the fraud of the equitable plaintiff, and that they had had no
opportunity of defending the suits, and in which they asked
that the execution of the judgments be enjoined. An answer
was filed denying those allegations, and testimony in connec-
tion with the issues thus made taken orally in the Circuit
Court of Baltimore City, and at its conclusion the court by its
decree enjoined the appellant from further prosecuting the
suits or executing on the judgments, but reserving to Jacob
Kartman the right to institute any proper action for the re-
covery of any monies due him by the appellees or either of
them, and from that decree the judgment creditors have taken
this appeal.

The first question, with which we are called upon to deal, is whether the magistrate at the time he entered the judgments to which we have referred had acquired jurisdiction of the persons of the appellees. If he had not, then obviously the judgments were nullities and the lower court was empowered to enjoin the appellants from executing on them.

The evidence shows, (1) that neither of the appellees had been summoned or notified of the pendency of the suits until after the judgments had been entered, and that neither of them had prior to that time appeared in proper person before the magistrate, (2) that no one "confessed judgment" before the magistrate against the appellees in any one of the suits, and (3) that no officer of the building association made oath as to the amount due on the notes at or prior to the time the judgments were entered.

The judgments rendered against the defendants were *in personam,* and the magistrate was clearly without jurisdiction to render them unless he had acquired, as a result of process or voluntary appearance, jurisdiction of their persons. *Wilmer* v. *Epstein,* 116 Md. 143; *Fahey* v. *Mottu,* 67 Md. 250; *Clark* v. *Bryan,* 16 Md. 171; *Koechlept* v. *Hook,* 10 Md. 173. And judgments rendered without his having acquired such jurisdiction were *coram non judice,* null and void. Not only does the magistrate's docket fail to show that the defendants were summoned, but it affirmatively appears without contradiction that they were not summoned and did not appear in proper person or in any manner in these actions before the judgments were entered. It is contended however that, even if they were not summoned, and did not appear in proper person in the actions before the magistrate, that by the powers of attorney contained in the several notes they waived process and notice, and authorized the magistrate to enter the judgments, and that he thereby acquired jurisdiction to make such entries, and we will therefore examine the evidence relating to that contention.

In the case of inferior courts sitting in the exercise of a special and limited jurisdiction, such as that exercised by

magistrates under the laws of this State, it is well settled that "there must be affirmative proof in support of the regularity of the proceedings. It is said, that 'no principle of law is more evident than that when the tribunal is of a limited jurisdiction, or the proceedings are particularly described by a statute made on the subject, that course of procedure, so described, must, on the face of the record appear to have been, if not literally at least substantially complied with, or the case must by the proceedings disclose itself to be within the limited jurisdiction.' *Shivers* v. *Wilson,* 5 H. & J. 132; *Owings* v. *Worthington,* 10 G. & J. 293." *Fahey* v. *Mottu,* 67 Md. 250.

Now in this case the only facts disclosed by the magistrate's docket, or by the proof in the case bearing upon that question, is that Mr. Goldstone made oath as attorney and agent for the plaintiffs as to the amount due, but, as the power of attorney is relied upon as a substitute for personal service of process upon the defendants, or for their appearance in proper person, it was essential that the conditions prescribed by it, as precedent to the exercise of the authority conferred by it, should be at least substantially complied with. One of those conditions was that some person should "appear before" the magistrate and "confess judgment" in favor of the building association "for such amount as the president or other officer of said body corporate will swear is then due on said note." But in this case no officer of the corporation made oath to the amount due, nor did any person appear before the magistrate and confess judgment against the defendants. Mr. Goldstone did indeed as attorney for the "plaintiff" make oath as to the amount due, but, as he was not an officer of the corporation, that act did not comply with the prescribed condition, and the testimony demonstrates the justice and the wisdom of the provision requiring the affidavit to be made by an officer of the corporation, for while Mr. Goldstone made the affidavit, he admitted that he had no personal knowledge of the facts he swore to, and made it solely on information obtained from the president of the corporation. Inasmuch as

the conditions precedent to the exercise of the power of attorney were not complied with, it conferred no authority upon the magistrate to enter the judgments referred to, and as he acquired no jurisdiction from any other source to enter them, it follows that he acted without jurisdiction and that the judgments were nullities and void.

The only other question which we need consider is whether a court of equity has the power to enjoin the execution of such judgments, and in disposing of that question it is only necessary to refer to the case of *Wilmer* v. *Epstein,* 116 Md. 145, in which this Court, speaking through JUDGE URNER, said: "The question to be determined, when reduced to its simplest form, is whether a court of equity must refrain from interfering with the enforcement of a personal judgment rendered without jurisdiction of the person, merely because the ostensible defendant does not aver and prove that he did not know of the pendency of the action. * * * Such a judgment is not merely erroneous because of some irregularity in the mode of proceeding, or error on the part of the court in the application of the law to the particular case, and for which the party aggrieved must seek a remedy by appeal or writ of error, but being a judgment rendered without jurisdiction, it is absolutely void and may be assailed at all times, and in all proceedings by which it is sought to be enforced. * * * The right to such equitable relief rests upon the ground that the judgment is a nullity and does not depend upon the ability of the party against whom it was rendered to show that he had no independent information as to the pendency of the suit."

In view of the conclusion we have reached it becomes unnecessary to refer to the other questions raised by counsel in their printed and oral arguments. For the reasons stated the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellees.*